UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES F. LEWIS,

     Plaintiff,

v.                                 Case No: 5:25-cv-209-JSS-PRL

BRIAN CAMPBELL and ROBERT S.
CHAUSSE,

     Defendants.
_____/

## **ORDER**

     Defendants, Brian Campbell and Robert Chausse, move to dismiss the complaint. (Dkt. 10.) Plaintiff, James Lewis, opposes the motion. (Dkt. 18.) Upon consideration, for the reasons outlined below, the motion is granted.

## **BACKGROUND**

     Plaintiff is a self-described citizen journalist, activist, and YouTuber. (Dkt. 1 ¶ 6.) According to the complaint, he was filming storefronts while window shopping when the manager of a local business asked him to stop. (*Id.* ¶¶ 5–7.) When Plaintiff refused, she called the police. (*Id.* ¶ 8.) Defendants are two of the police officers who were dispatched to the scene. (*Id.* ¶ 9.)

The entirety of events is captured in Plaintiff's hour-long video, the recording of the bank manager's call to law enforcement, and the officers' body camera footage.[1] (*See* Dkts. 19, 20, 23.)  Initially, Plaintiff's video shows him strolling through a shopping complex, pausing on several occasions to film storefront displays featuring items such as lingerie and luxury women's clothing.  (Dkt. 20, Ex. E at 00:23:00–00:28:40.)  Twenty-five minutes into the video, Plaintiff arrives at a bank.  (*Id.* at 00:24:59.)

As he had done before, Plaintiff approached the bank's windows to film inside. (*Id.* at 00:24:59–00:35:41.)  Eventually, Plaintiff came upon a window with a view of a banker's computer monitor.  (*Id.* at 00:26:27.)  For several minutes, Plaintiff filmed over the banker's shoulder.  (*Id.* at 0:26:27–0:28:40.)  Eventually, Plaintiff was discovered, and the bank's manager came out to confront him.  (*Id.* at 00:28:00–00:29:00.)  During their brief encounter, the bank's manager asked Plaintiff not to film through the windows, to protect client information.  (*Id.* at 00:28:40–00:29:00.) Plaintiff refused.  (*Id.*)  Then, the bank's manager warned Plaintiff that she would call

---

[1] When considering a motion to dismiss, the court "may properly consider a document not . . . attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims[] and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  In the complaint, Plaintiff refers to video footage of the relevant events captured on his cell phone and the responding officers' body cameras, as well as the 911 call to which the officers were responding.  (Dkt. 1 ¶¶ 5, 8–9, 11, 21.) Although Plaintiff did not provide copies of these materials in conjunction with his complaint, he did so in responding to the motion to dismiss.  (*See* Dkt. 20.)  Defendants have similarly provided copies to the court.  (Dkt. 23.)  All parties have asked the court to consider these materials in deciding the motion.  (*See* Dkt. 10 at 6–9; *see also* Dkt. 18 at 6.)  The contents of the call and the videos are central to Plaintiffs' causes of action, and their authenticity is uncontested.  (*See* Dkt. 19 at 4–5; *see also* Dkt. 20.)  As a result, the court considers the bank manager's call to law enforcement and the footage captured by each of the parties as incorporated by reference in the amended complaint.  *See Johnson*, 107 F.4th at 1300.

the police if he continued to film into the bank.  (*Id.* at 00:29:04.)  Plaintiff continued

to film.  (*Id.* at 00:29:00–00:35:30, 00:38:32–00:39:00.)

     The bank's manager called the police.  During the call, she told the dispatcher

that an unknown man was intentionally filming into her bankers' offices, where

computer monitors displayed customer information.  (Dkt 20, Ex. A at 00:00:08–

00:02:30.)  She also told the dispatcher that she had confronted Plaintiff and asked him

to stop filming, but he had refused.  (*Id.* at 00:00:08–00:00:20, 00:01:10–00:02:17.)

According to the bank's manager, Plaintiff was still walking around the exterior of the

bank and filming through windows, which had led the staff to lock the doors and close

the blinds.  (*Id.* at 00:02:50–00:04:15.)

     Several officers arrived shortly thereafter and engaged Plaintiff in a consensual

encounter.  (Dkt. 18 at 14.)  Plaintiff was aggressive from the start, often yelling at

officers and hurling explicatives, while demanding to know whether the officers were

responding to a call for assistance from the bank or another location in the shopping

plaza. (Dkt. 20, Ex. E at 00:51:10–01:01:00.)  Plaintiff also refused to answer questions

or even identify himself.  (*Id.* at 00:53:25–00:53:35, 01:03:25–01:06:48.)

     While several officers engaged Plaintiff, Defendant Chausse departed to meet

the staff at the bank.  (Dkt. 20, Ex. B at 00:08:35–00:11:00).  During their meeting, the

bank's staff asked that Plaintiff be cited for trespassing.  (*Id.*)  Meanwhile, Plaintiff was

detained so officers could determine whether he had committed a crime.  (Dkt. 20, Ex.

E at 01:00:59–01:02:43.)  Shortly thereafter, the bank's security officer stepped outside

to tell Plaintiff that he had been trespassed from the bank.  (*Id.* at 01:03:00–01:03:20.)

Plaintiff started to leave but was informed by Defendant Campbell that he was still detained because the officers needed to investigate and document the trespass. (*Id*. at 01:03:20–01:06:48.)

Overall, Plaintiff was detained for just under six minutes. (*Id*. at 01:01:05–01:06:48.) He now sues Defendants under 42 U.S.C. § 1983, (Dkt. 1 ¶¶ 22, 26, 29), alleging that they violated his rights secured by the United States Constitution and Florida law, (*id.* ¶¶ 22–31). In Count I, Plaintiff alleges that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures when they briefly detained him. (*See* Dkt. 1 ¶¶ 15–18, 21–25.) In Count II, Plaintiff seemingly claims that his brief detention constituted a false imprisonment, in violation of the United States Constitution and Florida law. (*Id.* ¶¶ 18–21, 26–28.) In Count III, Plaintiff asserts that his detention violated the First Amendment because the impetus for the stop was not Defendants' reasonable suspicion that Plaintiff had engaged in criminal activity, but retaliation for a lawsuit that he had filed against two other police officers. (*Id.* ¶¶ 16, 21, 29–31.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on such a motion to dismiss, a court must accept all well-pleaded factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lotierzo v. A Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). To survive a Rule 12(b)(6)

- 4 -

challenge, a plaintiff cannot put forth solely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Instead, the "complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). To meet this standard, the facts alleged in the complaint must show more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The allegations of a pro se complaint are subject "to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Courts therefore "give liberal construction" to pro se filings. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Nonetheless, the court may not serve as de facto counsel for a pro se party or rewrite a deficient complaint to sustain a lawsuit. *See Campbell*, 760 F.3d at 1168–69.

## ANALYSIS

Defendants move to dismiss each count.  (*See* Dkt. 10.)  Primarily, Defendants contend that the complaint must be dismissed because they are entitled to qualified immunity.[2]  (*Id.* at 2, 11–20.)

"Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019) (quotations omitted).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and quotation omitted), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *accord Carruth*, 942 F.3d at 1054.  "To invoke the defense of qualified immunity, a government official must have been acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021) (quotation

---

[2]  In their motion to dismiss, Defendants also argue that the complaint is a shotgun pleading.  (*Id.* at 2, 9–11.)  They further contend that Count II fails to state a claim because violations of state criminal law cannot support a cause of action under section 1983, and that Count III fails to plead sufficient facts to state a claim.  (Dkt. 10 at 20–25.)  The court notes that state law violations cannot support Plaintiff's section 1983 claims.  *See Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1325 (11th Cir. 2012); *Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir. 1995) ("To succeed, a section 1983 plaintiff must show a violation of a right secured by federal law.").  Accordingly, the court limits its consideration to whether Plaintiff has a cause of action under section 1983 for the purported constitutional violation.  In any event, because the court agrees that qualified immunity applies, it does not address Defendants' remaining arguments.

omitted). "After a government official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time." *Id.*

Here, the parties agree that Defendants were exercising discretionary authority as police officers when they detained Plaintiff to conduct an investigatory stop. (Dkt. 10 at 11, 23 n.6; Dkt. 18 at 4, 20.) *See Jackson v. City of Atlanta*, 97 F.4th 1343, 1356 (11th Cir. 2024) ("There is no dispute that in making an investigatory stop[,] an officer is exercising a discretionary function."). Each cause of action stems from Defendants' conduct in relation to the investigatory stop. (*See* Dkt. 1 ¶¶ 22–31.) As a result, the burden shifts to Plaintiff "to show that qualified immunity is not appropriate." *Carruth*, 942 F.3d at 1054 (quotation omitted).

Qualified immunity is inappropriate if Plaintiff can show that "(1) the facts alleged in his complaint constitute a violation of his constitutional rights[] and (2) the constitutional rights were clearly established when . . . [D]efendant[s] committed the act complained of." *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014) (quotation omitted). Plaintiff must make these showings on "a claim-by-claim and defendant-by-defendant basis." *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025). If Plaintiff fails to make either showing, Defendants are entitled to qualified immunity for that cause of action. *Jacoby v. Baldwin County*, 835 F.3d 1338, 1344 (11th Cir. 2016) (citation omitted). The court may therefore begin its analysis

with either prong.  *See Morris*, 748 F.3d at 1322; *see also Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (noting that courts have "flexibility to determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all").

### A. Counts I and II

A section 1983 plaintiff "must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  In Count I, Plaintiff contends that Defendants violated his rights secured by the Fourth Amendment when they detained him "without reasonable suspicion of a crime being afoot." (Dkt. 1 ¶¶ 15–24.)  In Count II, he contends that the same conduct resulted in his false imprisonment, in violation of the Fourth Amendment.  (*Id.* ¶¶ 26–27.)

"The Fourth Amendment guarantees individuals the right to be free from unreasonable searches and seizures of their persons." *United States v. Solomon*, No. 2:15-CR-142-FTM-38CM, 2016 WL 561420, at *1 (M.D. Fla. Feb. 12, 2016) (citing U.S. Const. amend. IV).  "Law enforcement officers violate this right if they commit certain acts without [a] proper basis.  A *Terry* stop is one such act." *Id.* (citation omitted).  However, "[t]he law is clearly established that an officer's brief, investigatory stop of a suspect does not violate the Fourth Amendment when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Jackson*, 97 F.4th at 1355-1356 (quotation omitted); *accord Metz v. Bridges*, No. 23-11275, 2024

WL 5088586, at *3 (11th Cir. Dec. 12, 2024) ("A brief, investigatory *Terry* stop does not violate the Fourth Amendment when the officer has a reasonable suspicion that the person has committed or is about to commit a crime." (citing *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011))). Defendants maintain that they are entitled to qualified immunity on Plaintiffs' Fourth Amendment claims because a reasonable officer could believe that Plaintiff either had committed, or was about to commit, several criminal acts, thus providing arguable reasonable suspicion to detain Plaintiff. (Dkt. 10 at 16–17.)

Reasonable suspicion is a "low bar." *United States v. Black*, No. 8:24-CR-113-KKM-AAS, 2025 WL 2418485, at *4 (M.D. Fla. Aug. 21, 2025); *accord United States v. Jean-Charles*, No. 15-60309-CR, 2016 WL 828830, at *3 (S.D. Fla. Mar. 3, 2016) ("The reasonable suspicion required to conduct an investigatory stop is not a high hurdle." (internal quotation marks omitted)). To meet this low bar, an officer needs only "a minimal level of objective justification for making the stop." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) (quotation omitted).

When an officer asserts qualified immunity in the context of an investigatory stop, that low bar drops even further, as the issue "is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." *Id.* at 1166 (internal quotation marks omitted); *accord Webb v. English*, No. 3:19-CV-975-MMH-JBT, 2021 WL 4340426, at *12 (M.D. Fla. Sept. 23, 2021) (explaining that qualified immunity will insulate officers from liability if they

had "an arguably reasonable suspicion that [a person has] violated Florida law, as opposed to an actual violation").

Whether an officer has arguable reasonable suspicion to support an investigatory stop is viewed objectively "'from the standpoint of a reasonable official at the scene' . . . based on the totality of the circumstances." *Young v. Brady*, 793 F. App'x 905, 909 (11th Cir. 2019) (quoting *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005)). Thus, an officer's "motive in making the [investigatory] stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *Jenkins v. Gaither*, 543 F. App'x 894, 897 (11th Cir. 2013) (quoting *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008)).

In this case, a hypothetical, reasonable officer would have had arguable reasonable suspicion to believe that Plaintiff had engaged in criminal activity. *See Young*, 793 F. App'x at 909. The Eleventh Circuit's decision in *United States v. Torres-Bonilla* illustrates the presence of arguable reasonable suspicion in this case. *See* 556 F. App'x 875, 879–80 (11th Cir. 2014). In *Torres-Bonilla*, officers observed Torres-Bonilla inserting several cards into a series of ATMs and withdrawing cash. *Id.* at 877. The officers thought this conduct was suspicious, so they tried to speak with Torres-Bonilla, but he ran away. *Id.* When the officers finally caught up to him, they sought to determine who he was and what he had been doing, but Torres-Bonilla refused to identify himself. *Id.* Consequently, officers arrested him for, among other things, loitering and prowling in violation of section 856.021, Florida Statutes. *Id.* Having

- 10 -

arrested Torres-Bonilla, officers then searched him and his vehicle, uncovering further evidence of criminal activity. *Id.* at 877–78. At trial, Torres-Bonilla moved to suppress this evidence, contending officers neither had reasonable suspicion to detain nor probable cause to arrest him. *See id.* at 878. The court denied the motion, and Torres-Bonilla was ultimately convicted of several offenses. *Id.* On appeal, Torres-Bonilla argued that the district judge erred in denying his motion to suppress. *Id.* The Eleventh Circuit upheld the validity of the search, finding that officers had probable cause to arrest Torres-Bonilla under section 856.021. *Id.* at 879. In reaching this decision, the court concluded that officers had probable cause to believe Torres-Bonilla was engaged in criminal activity when they observed him "loitering at several ATMs in a manner not usual for law-abiding individuals." *Id.* at 880 (quotation and citation omitted). The court also determined that the circumstances warranted "a justifiable and reasonable alarm or immediate concern" that the property of others was at risk based on the man's suspicious activities and his refusal to identify himself. *Id.* (quotation omitted).

Like *Torres-Bonilla*, Plaintiff was observed acting suspiciously in a place where financial transactions occur and personal identification information is exchanged. (Dkt. 20, Ex. E at 00:24:59–00:39:00.) In her call to police, the bank manager reported that an unknown man, matching Plaintiff's description, was walking around the building's exterior, looking into offices, and intentionally filming computers that displayed customer information. (*See* Dkt 20, Ex. A.) This sort of behavior is not usual for law-abiding individuals. *See Torres-Bonilla*, 556 F. App'x at 880. Although

Defendants did not witness Plaintiff loitering or filming client information through the bank's windows, they had constructive knowledge of his suspicious behavior under Florida's fellow officer rule. *See State v. Maynard*, 783 So. 2d 226, 229 (Fla. 2001) (imputing knowledge from a dispatcher to the officer who ultimately responded to the call); *see also Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012) ("[B]oth the United States Supreme Court and the Florida Supreme Court have allowed the collective knowledge of the investigating officers to be imputed to each participating officer."); *Joseph v. Chronister*, No. 8:16-CV-274-T-35CPT, 2020 WL 13657218, at *21 (M.D. Fla. Feb. 21, 2020) (finding an officer was entitled to qualified immunity under the fellow officer rule for causes of action emanating from an arrest made upon information supplied by a fellow deputy). Based on the information relayed by the bank's manager, Defendants had arguable reasonable suspicion to believe that Plaintiff was loitering or prowling "in a place, at a time[,] or in a manner not usual for [a] law-abiding individual[]" in violation of section 856.021. *See* Fla. Stat. § 856.021(1). Defendants also had arguable reasonable suspicion to believe that the circumstances "warrant[ed] a justifiable and reasonable alarm or immediate concern for the safety of . . . property in the vicinity," as required under that statute, because Plaintiff refused to identify himself. *See id.*; *see also Torres-Bonilla*, 556 F. App'x at 880 ("Alarm is presumed under the second element of § 856.021 if, when law enforcement appears, the defendant . . . refuses to identify himself."). Further, Defendants "were entitled to be reasonably and justifiably concerned that the property of others was at risk," having

received a report that Plaintiff was filming computer monitors that displayed personal identification information—such as bank account and payment card numbers—belonging to the bank's clients in violation of Florida law. (Dkt 20, Ex. A at 00:00:08–00:04:15.)   This information also provided Defendants with arguable reasonable suspicion to believe that Plaintiff may have violated section 817.5685, Florida Statutes, which prohibits "intentionally or knowingly possess[ing], without authorization, the personal identification information of another person." *See* Fla. Stat. § 817.5685(1)–(2) (defining "personal identification information" to include a person's "social security number, . . . bank account number, [and] credit or debit card number"). (*See* Dkt 20, Ex. A.)

Under the totality of the circumstances, Defendants had arguable reasonable suspicion to believe that Plaintiff had engaged in criminal activity.   Any subjective reason that they may have had for detaining him is immaterial.   *See Jenkins*, 543 F. App'x at 897.   Further, because Defendants had arguable reasonable suspicion to believe criminal activity was afoot, Plaintiff cannot show that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures.   *Metz*, 2024 WL 5088586, at *3 (citing *Jordan*, 635 F.3d at 1186).   Defendants are therefore entitled to qualified immunity on Counts I and II.

Even if Defendants did not have arguable reasonable suspicion to detain Plaintiff consistent with the Fourth Amendment, they are still entitled to qualified immunity because Plaintiff has not shown that his right not to be detained in this case was sufficiently well-established that "every reasonable [officer] would have

understood" that Defendants' conduct violated the Fourth Amendment. *Gates*, 884 F.3d at 1296 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "In other words, 'existing precedent must have placed the . . . constitutional question *beyond debate*,'" thereby giving Defendants fair warning that their conduct violated the law. *Id.* (quoting *Reichle*, 566 U.S. at 664).

> A right can be clearly established in one of three ways:
>
> First, the plaintiff can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court. This first method looks at the relevant [caselaw] at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law. The prior [caselaw] need not be directly on point, but an existing precedent must have placed the . . . constitutional question beyond debate. Second, the plaintiff can identify a broader, clearly established principle that should govern the novel facts of the situation. Third, the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior [caselaw] is unnecessary. For this third route, the plaintiff must establish that the conduct lies so obviously at the core of what the alleged constitutional amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific [caselaw]. This third method, often referred to as the obvious clarity scenario, is a narrow exception to the normal rule that only [caselaw] and specific factual scenarios can clearly establish a violation.

*Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (alterations adopted and quotations omitted).

When a plaintiff attempts to show that the defendant violated a clearly established right by pointing to a materially similar case, the court must consider "whether the factual scenario that the official faced [in the present case] is fairly distinguishable from the circumstances facing [the] government official in [the]

previous case." *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (quotations omitted). If caselaw "has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (quotations omitted).

In opposing Defendant's entitlement to qualified immunity, Plaintiff directs the court to several decisions, each of which is inapposite. To begin, the decisions in *Gestewitz v. State of Florida*, 34 So. 3d 832 (Fla. Dist. Ct. App. 2010), *S.N.J. v. State of Florida*, 17 So. 3d 1258 (Fla. Dist. Ct. App. 2009), and *Rodriguez v. State of Florida*, 29 So. 3d 310 (Fla. Dist. Ct. App. 2009), could not have placed the constitutionality of Plaintiff's detention beyond debate because they were not authored by the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court. *See Stalley*, 124 F.4th at 1284. (*See also* Dkt. 18 at 9, 12, 14, 15.)

Turning to the authoritative decisions in Plaintiff's brief, the court finds that the decisions in *State of Florida v. J.P.*, 907 So. 2d 1101 (Fla. 2004), and *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), are too dissimilar to have placed the constitutional question beyond debate, as neither decision considered the constitutionality of an investigatory stop. *See Gaines*, 871 F.3d at 1209. (*See also* Dkt. 18 at 9, 11, 17.) In *J.P.*, the Florida Supreme Court struck down a pair of ordinances imposing curfews on minors because they were unconstitutionally overbroad, 907 So. 2d at 1112–13, while the United States Supreme Court in *Papachristou* held that a traditional vagrancy ordinance criminalizing activities such as "common night walk[ing]," "wandering or strolling . . . without any lawful purpose or object," "habitual loaf[ing]," and

- 15 -

"habitually living upon the earnings" of one's wife or minor children was unconstitutionally vague, 405 U.S. at 158 n.1, 162; *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 184 (2004) ("In *Papachristou* . . ., the Court held that a traditional vagrancy law was void for vagueness. Its broad scope and imprecise terms denied proper notice to potential offenders and permitted police officers to exercise unfettered discretion in the enforcement of the law."). Plaintiff is not challenging an ordinance that criminalized his status as a vagrant or that prevented him from being out after a certain hour. (*See* Dkt. 1.) *See Watts v. State*, 463 So. 2d 205, 206–07 (Fla. 1985) (reaffirming the constitutionality of section 856.021); *State v. Ecker*, 311 So. 2d 104, 107 (Fla. 1975) (distinguishing section 856.021 from the ordinance at issue in *Papachristou* because section 856.021 does not broadly proscribe loitering or idling, but only such conduct "that threatens public safety or a breach of the peace"). Thus, the decisions in *J.P.* and *Papachristou* are too factually attenuated to have given Defendants fair warning that their conduct violated the Fourth Amendment. *See Gates*, 884 F.3d at 1296.

Plaintiff also relies upon *Brown v. Texas*, 443 U.S. 47 (1979) to support his arguments against the application of qualified immunity. (*See* Dkt. 18 at 10-11.) In *Brown*, the United States Supreme Court considered the constitutionality of a *Terry* stop in which officers detained a man without suspecting him of any "specific misconduct." 443 U.S. at 49. Instead, the officers detained him solely "to ascertain his identity." *Id.* at 52. As the Court held, the stop "violated the Fourth Amendment

because the officers *lacked any reasonable suspicion* to believe [that the man] was engaged or had engaged in criminal conduct." *Id.* at 53 (emphasis added). That is not what happened here. While Defendant Campbell may have asked Plaintiff to identify himself during the investigatory stop, that was not the *only* reason for Plaintiff's detention. As discussed, Plaintiff was detained for just under six minutes following a report that a man matching his description was walking around a bank while videoing computer monitors that displayed other people's personal information. (Dkt 20, Ex. A.) As a result, Plaintiff has not cited a decision of the United States Supreme Court, Eleventh Circuit, or Florida Supreme Court applying the Fourth Amendment right against unreasonable searches and seizures to a sufficiently similar factual scenario such that it would have put the unconstitutionality of Plaintiff's detention beyond debate. *See Gaines*, 871 F.3d at 1209–10.

Nor has Plaintiff identified a broad, yet clearly established, principle in the Constitution or an authoritative decision that is "specific enough to establish clearly the law applicable to" Defendants' conduct and the circumstances of this case such that Defendants are not entitled to qualified immunity. *See Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). Plaintiff cites the Fourth Amendment as the source of his right, but the Amendment's language is too broad to place the constitutionality of Plaintiff's detention beyond debate. *See City [and] County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) ("Qualified immunity is no immunity at all if clearly established law can simply be defined as the right to be free from unreasonable searches and seizures." (internal quotation marks omitted)); *Bell v. Wolfish*, 441 U.S. 520, 559

(1979) ("The test of reasonableness under the Fourth Amendment *is not capable of precise definition or mechanical application*. In each case it requires a balancing of the need for the particular search [or seizure] against the invasion of personal rights that [it] entails." (emphasis added)); *Cooper v. California*, 386 U.S. 58, 59 (1967) ("[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. . ." (citations omitted)). Because the Fourth Amendment's broad prohibition against unreasonable searches and seizures does not place the constitutionality of Plaintiff's detention beyond debate, it could not have provided Defendants with fair warning that their conduct violated the law. *See Gates*, 884 F.3d at 1296. Thus, Plaintiff needed to identify an authoritative decision that was sufficiently specific to provide Defendants with fair warning that their conduct was unlawful. *See Vinyard*, 311 F.3d at 1350.

Broad statements of principle in authoritative judicial decisions can show that a constitutional right was clearly established when they "are not tied to [the] particularized facts" of the case and can thus establish a clear, broad principle that can be applied to "different sets of detailed facts." *Id.* at 1351. Still, there is a presumption that judge-made law does not create "wide principles of law." *Id.* Thus, "if a broad principle in [caselaw] is to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* (internal quotation marks omitted). "[G]eneral, conclusory allegations or broad legal truisms"

- 18 -

will not do. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (quotations omitted).

Plaintiff quotes several broad passages from *Brown*, *J.P.*, *Papachristou*, and *Florida v. Bostick*, 501 U.S. 429 (1991), none of which clearly establish a principle that would have given Defendants "fair warning . . . that the conduct at issue violated a constitutional right." *Gaines*, 871 F.3d at 1208. For instance, Plaintiff derives the principle that "[a]ll Florida citizens have a right under the Florida Constitution to chat on a public street, stroll aimlessly, and saunter down a sidewalk" from the Florida Supreme Court's decision in *J.P.* (*See* Dkt. 18 at 9 (quotation omitted).) He further cites *Papachristou* for the premise that "[h]ailing a cab or a friend, chatting on a public street, and simply strolling aimlessly are time-honored pastimes in our society and are clearly protected under Florida as well as federal law." (*Id.* at 11.) Finally, Plaintiff points to the United States Supreme Court's decision in *Bostick* for the rule that police must have reasonable, articulable suspicion to detain a citizen and the Court's earlier opinion in *Brown* for the rule that "detaining a person for the purpose of requiring him to identify himself constitutes a seizure requiring a reasonable, articulable suspicion that a crime had just been, was being, or was about to be committed." (*Id.* at 10–11, 12 (quotations omitted).) These legal propositions are too broad to provide a hypothetical, reasonable officer with fair warning that detaining Plaintiff would violate the Fourth Amendment, as Plaintiff was not detained while chatting on a public street, strolling aimlessly, or hailing a friend. *See Post*, 7 F.3d at 1557 ("To show the law is

clearly established, a plaintiff cannot rely on general, conclusory allegations or broad legal truisms." (quotations omitted)).  Further, the decisions in *Bostick* and *Brown* cannot provide the clear, broad principle that Plaintiff needs to overcome Defendants' entitlement to qualified immunity, because their rules are tied to the particular facts of those cases.  *Vinyard*, 311 F.3d at 1351.  As discussed, *Brown* turned on the officers' utter lack of reasonable suspicion.  *See* 443 U.S. at 49.  *Bostick* is similarly confined to its particular facts because the state had previously conceded that the officers "lacked the reasonable suspicion required to justify a seizure."  501 U.S. at 433–34.  Thus, the sole issue on appeal was "whether *a police encounter on a bus of the type described* [in the briefing] constitute[d] a 'seizure' within the meaning of the Fourth Amendment." *Id*. at 433 (emphasis added).  Still, even if the decisions in *Bostick* and *Brown* were not so confined, they do not state principles that would have given Defendants fair warning that Plaintiff's detention violated the Fourth Amendment, as Defendants had arguable reasonable suspicion to detain Plaintiff.  *See* Gates, 884 F.3d at 1296.  At bottom, the principles that Plaintiff extracts from *Bostick*, *Brown*, *J.P.*, and *Papachristou* do not establish clear legal principles that would have led every objectively reasonable officer to conclude that Defendants' conduct violated the Fourth Amendment.

Finally, Plaintiff has not shown that this case fits within the "narrow exception to the normal rule that only [caselaw] and specific factual scenarios can clearly establish a violation."  *Stalley*, 124 F.4th at 1284 (quotations omitted).  This final method for demonstrating that a right is clearly established is "reserved for extreme circumstances presenting particularly egregious facts that would have put any

- 20 -

reasonable officer on notice that his actions offended the Constitution." *Demarcus v. Univ. of S. Ala.*, 133 F.4th 1305, 1319 (11th Cir. 2025) (quotations omitted). Cases falling within this category "are few and far between[] and . . . invariably deal with conduct that is beyond any reasonable pale." *Id.* Plaintiff does not allege such conduct.

Plaintiff has not met his burden to show that Defendants violated his Fourth Amendment rights or that his purported constitutional right not to be detained in this case was sufficiently well-established that "every reasonable [officer] would have understood" that Defendants' conduct violated the Constitution. *See Gates*, 884 F.3d at 1296. Accordingly, Defendants are entitled to qualified immunity on Counts I and II.

### B. Count III

Count III is a section 1983 claim asserting that Defendants deprived Plaintiff of his First Amendment rights when they detained him in retaliation for suing two other police officers. (Dkt. 1 ¶¶ 29–30.) Thus, the viability of Plaintiff's First Amendment claim turns on the legality of his detention. *See Gates*, 884 F.3d at 1298 ("[W]hen an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest."); *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because . . . the officers had arguable probable cause to arrest [the plaintiff,] . . . the officers are also entitled to qualified immunity from the . . . First

Amendment claims." (citation omitted)).    Because Defendants had arguable reasonable suspicion to detain Plaintiff and are entitled to qualified immunity on his Fourth Amendment claims arising from the detention, they are also entitled to qualified immunity with respect to Plaintiff's First Amendment claim.  *See Bannister v. Conway*, No. 1:12-CV-1487-TWT, 2013 WL 5770802, at *7 (N.D. Ga. Oct. 23, 2013) ("A plaintiff may not sustain a First Amendment retaliation claim based on acts protected by qualified immunity.").

## CONCLUSION

Accordingly:

1.    Plaintiffs' motion to dismiss (Dkt. 10) is **GRANTED**.

2.    The complaint (Dkt. 1) is **DISMISSED with PREJUDICE**.

3.    The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions, and close this case.

**ORDERED** in Ocala, Florida, on October 14, 2025.


JULIE S. SNEED
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Party

- 22 -